IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAKAEL BROWN,<br><br>                Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC,<br><br>                Defendants. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff RAKAEL BROWN, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants TransUnion, LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax"), and Experian Information Services, Inc. ("Experian") (referenced collectively as "CRA Defendants").

## I.    INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by [CRA] Defendants. Plaintiff contends the CRAs failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

1

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.   PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Henry County, Georgia.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

8. Experian is a corporation with its headquarters located in Costa Mesa, California.

9. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the

business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

10. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

11. Defendant TransUnion, LLC ("TransUnion") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

12. TransUnion is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 60661.

13. During all times pertinent to this Complaint, the CRA Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

14. During all times pertinent to this Complaint, the CRA Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15. Any violations by the CRA Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

16. The CRA Defendants maintained procedures reasonably adapted to avoid any such violations.

IV. **FACTUAL BACKGROUND**

17. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

22. The CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

23. The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

24. The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

25. The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

26. The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

27. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

28. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

29. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

30. However, the CRA Defendants also know that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

31. Further, the CRA Defendants know that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

32. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily

retrieved from the same sources from which the CRA Defendants independently obtains consumer bankruptcy case information.

33. The CRA Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

34. Despite the availability of accurate consumer information, the CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

35. The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

36. The CRA Defendants routinely report/s inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

37. Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendants' own files.

38. Defendants also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also

would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

39. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

40. Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

41. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about June 30, 2023, in the United States Bankruptcy Court.

42. Plaintiff received an Order of Discharge on or about October 11, 2023.

43. Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

44. The CRA Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

45. The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

46. In the Public Records section of Plaintiff's consumer reports, the CRA Defendants included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

47. The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

48. The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

49. The CRA Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

50. Specifically, the CRA Defendants are inaccurately reporting Plaintiff's Flagship Credit Acceptance ("FLAGSHIP") Account, opened in February of 2020, which predated Plaintiff's bankruptcy filing, with a status of "DELINQ 120+" and an outstanding balance of $27,795.00.

51. The FLAGSHIP account was discharged in October of 2023. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

52. The CRA Defendants did not indicate that the FLAGSHIP account was discharged in bankruptcy or report the Account with a zero balance, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer reports and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

53. The CRA Defendants knew or should have known that Plaintiff's debts were discharged in bankruptcy, including this FLAGSHIP account.

54. The CRA Defendants reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and/or with a zero balance.

*Plaintiff's Damages*

55. Upon information and belief, had the CRA Defendants accurately reported the FLAGSHIP account with a zero balance, Plaintiff's credit scores and/or debt to income ratio ("DTI") would have been better, thereby improving Plaintiff's credit worthiness.

56. The false increased debt due to the CRA Defendants' inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

57. As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

58. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

59. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

### V.   COUNT I
### AGAINST TRANS UNION
### Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b)

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

61. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

62. In this case, Trans Union negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

63. Trans Union independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

64. When Trans Union procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

65. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Trans Union from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

66. Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

67. Defendant Trans Union knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

68. Additionally, Trans Union possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

69. Defendant Trans Union knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

70. Yet Trans Union inaccurately reported the FLAGSHIP account, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

71. Despite knowledge of these legal obligations, Trans Union willfully and consciously breached its duties under the FCRA. Accordingly, Trans Union deprived Plaintiff of Plaintiff's rights under the FCRA.

72. Trans Union had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

73. Individual furnishers of account information also notified Trans Union of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

74. Yet in this case, Trans Union reported the FLAGSHIP account, which predated Plaintiff's bankruptcy, as delinquent with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

75. Defendant Trans Union thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by

information known by Trans Union, reported to Trans Union, or reasonably available to Trans Union.

76. As a result of Trans Union's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

77. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Trans Union's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

78. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

79. Defendant Trans Union is a direct and proximate cause of Plaintiff's damages.

80. Therefore, Trans Union is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   COUNT II
### AGAINST EQUIFAX
**Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b)**

81. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

82. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

83. In this case, Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

84. Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

85. When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

86. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

87. Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

88. Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

89. Additionally, Equifax possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

90. Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

91. Yet Equifax inaccurately reported the FLAGSHIP account, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

92. Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA. Accordingly, Equifax deprived Plaintiff of Plaintiff's rights under the FCRA.

93. Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

94. Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

95. Yet in this case, Equifax reported the FLAGSHIP account, which predated Plaintiff's bankruptcy, as delinquent with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

96. Defendant Equifax thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

97. As a result of Equifax's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

98. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

99. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

100. Defendant Equifax is a direct and proximate cause of Plaintiff's damages.

101. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VII.  COUNT III
### AGAINST EXPERIAN
**Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b)**

102. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

103. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

104. In this case, Experian negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

105. Experian independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

106. When Experian procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

107. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Experian from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

108. Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

109. Defendant Experian knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

110. Additionally, Experian possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

111. Defendant Experian knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

112. Yet Experian inaccurately reported the FLAGSHIP account, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

113. Despite knowledge of these legal obligations, Experian willfully and consciously breached its duties under the FCRA. Accordingly, Experian deprived Plaintiff of Plaintiff's rights under the FCRA.

114. Experian had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

115. Individual furnishers of account information also notified Experian of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

116. Yet in this case, Experian reported the FLAGSHIP account, which predated Plaintiff's bankruptcy, as delinquent with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

117. Defendant Experian thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Experian, reported to Experian, or reasonably available to Experian.

118. As a result of Experian's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

119. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Experian's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

120. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

121. Defendant Experian is a direct and proximate cause of Plaintiff's damages.

122. Therefore, Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a) Declaratory judgment that Defendants Experian, Equifax, and TransUnion violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## IX.  JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: March 28, 2024

By: */s/ Misty Oaks Paxton*
Misty Oaks Paxton, Esq.
THE OAKS FIRM
3895 Brookgreen Pt.
Decatur, GA 30034
Tel: (404) 500-7861
Email: attyoaks@yahoo.com
*Attorney for Plaintiff*